[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 294.]

IN RE BYARD, APPELLANT, *v*. BYLER, APPELLEE.

[Cite as *In re Byard*, 1996-Ohio-163.]

*Domestic relations—Reciprocal enforcement of child support—R.C. Chapter 3115 does not confer subject matter jurisdiction over issues concerning child custody and visitation in an action for child support enforcement.*

————————————

Ohio's Uniform Reciprocal Enforcement of Support Act ("URESA"), R.C. Chapter 3115, does not confer subject matter jurisdiction over issues concerning child custody and visitation in an action for child support enforcement.

————————————

(No. 94-1693—Submitted November 8, 1995—Decided January 17, 1996.)

APPEAL from the Court of Appeals for Tuscarawas County, Nos. 93AP100073 and 93AP110078.

————————————

{¶ 1} In December 1987, while petitioner-appellant, Tammy Byard, lived in Kimbolton, Ohio, she and respondent-appellee, Jonathan Byler, had sexual intercourse which resulted in the conception of Courtney Lachelle Byard. Before Courtney was born, appellant moved to Lewisport, Kentucky to be near her parents. Courtney was born on October 1, 1988. Appellee lived in Newcomerstown, Ohio.

{¶ 2} On June 19, 1989, appellant filed in the Hancock County, Kentucky District Court a Uniform Support Petition and affidavit pursuant to Kentucky's Uniform Reciprocal Enforcement of Support Act ("URESA"), Ky.Rev.Stat.Ann. 407.010 *et seq.* (1995). The Kentucky court transmitted the petition to the Ohio Child Support Enforcement Agency ("CSEA"). On July 11, 1990, the Tuscarawas County, Ohio Prosecutor, on behalf of the CSEA, filed a motion for a hearing on the petition. On June 20, 1990, the Tuscarawas County Court of Common Pleas

referee held a hearing at which appellee raised the defense of nonpaternity, pursuant to R.C. 3115.24. On June 28, 1990, the referee ordered that the case be transferred to the Tuscarawas County Juvenile Court to determine paternity.

{¶ 3} On September 6, 1991, the juvenile court referee held a hearing, at which evidence was admitted pertaining to the determination of paternity. On November 5, 1991, the referee filed a report concluding that appellee is Courtney's natural father and recommending that (1) appellant be designated Courtney's primary residential custodian, (2) appellee be granted reasonable visitation rights, and (3) appellee pay child support of fifty dollars per month plus arrearages. On December 13, 1991, the court adopted the referee's report.

{¶ 4} On July 30, 1992, in response to a letter from appellee complaining about denied visitation rights, the juvenile court referee ordered a hearing on the issue of visitation rights. At the hearing held on December 18, 1992, appellee was present and represented by counsel; appellant was not present, nor was she represented by counsel. On April 8, 1993, the juvenile court referee filed a report recommending that appellee be granted specific visitation rights. Appellee was present and represented by counsel when, on May 17, 1993, the court held a hearing on appellant's objections to the referee's report. Again, appellant was not present at the hearing, nor was she represented by counsel. An attorney attended the hearing on behalf of the CSEA, but did not purport to represent appellant. On May 19, 1993, the court ordered that the specific visitation rights designated by the referee be continued until appellant could appear at a second hearing.

{¶ 5} On June 16, 1993, upon appellant's request, the court appointed counsel for her. On June 18, 1993, appellant, through counsel, filed a motion to dismiss, alleging that the juvenile court did not have subject matter jurisdiction to determine and order visitation rights under URESA. On August 19, 1993, the juvenile court overruled appellant's motion to dismiss and ordered further hearings to determine visitation rights. On September 21, 1993, the court held a hearing at

which both parties were present and represented by legal counsel. Appellant renewed her motion to dismiss based on lack of jurisdiction of the juvenile court at the hearing. The court again overruled the motion. On September 23, 1993, the court ordered that appellee's specific visitation rights be continued.

{¶ 6} Upon appeal, the court of appeals affirmed in part and held that because Ohio's URESA allows for a determination of paternity, it also allows for a determination of custody and visitation rights.

{¶ 7} The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Southeastern Ohio Legal Services* and *Jeffrey M. Ginsburg*, for appellant.

*Woodard & Bohse* and *Frederick H. Bohse; Connolly, Hillyer & Welch* and *Kenneth R. Welch*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Karen Lazorishak*, Assistant Attorney General, urging reversal for *amicus curiae*, Ohio Department of Human Services.

*John S. Marshall*, urging reversal for *amici curiae*, National Center on Women and Family Law, Inc., Association for Children for Enforcement of Support ("ACES"), Ohio National Organization for Women, and Ohio National Organization for Women Education and Legal Fund.

*Ohio State Legal Services Association* and *Michael R. Smalz*, urging reversal for *amici curiae*, Clearfield County, Pennsylvania ACES, Washtenaw County, Michigan ACES, Fayette County, Kentucky ACES, Franklin County, Ohio ACES, and Wisconsin ACES.

———————————

**ALICE ROBIE RESNICK, J.**

**{¶ 8}** The issue presented by this case is whether Ohio's Uniform Reciprocal Enforcement of Support Act ("URESA"), R.C. Chapter 3115, grants a court subject matter jurisdiction to determine child custody and visitation rights. The purpose of URESA is to "improve and extend by reciprocal legislation the enforcement of *duties of support*" across state lines. (Emphasis added.) R.C. 3115.01(A); *Levi v. Levi* (1960), 170 Ohio St. 533, 11 O.O.2d 364, 166 N.E.2d 744, syllabus. More specifically, R.C. 3115.29 strictly limits to matters of support the court's subject matter jurisdiction in a URESA action:

"Participation in any proceedings under sections 3115.01 to 3115.34, inclusive, of the Revised Code, does not confer upon any court jurisdiction over any of the parties thereto in any other proceeding."

**{¶ 9}** See, also, generally, *San Diego Cty. v. Elavsky* (1979), 58 Ohio St.2d 81, 12 O.O.3d 88, 388 N.E.2d 1229.

**{¶ 10}** No provision in Ohio's URESA grants the court subject matter jurisdiction over a disputed matter other than paternity and child support.[1] In an action involving disputed child support that was initiated pursuant to URESA, the court has no subject matter jurisdiction to consider visitation and custody matters. The issue of subject matter jurisdiction cannot be waived and therefore can be raised at any time during the proceedings. Civ.R. 12(H)(3); *State ex rel. Lipinski v. Cuyahoga Cty. Court of Common Pleas, Probate Div.* (1995), 74 Ohio St.3d 19, 21-22; 655 N.E.2d 1303, 1306; *Springfield Local School Dist. Bd. of Edn. v. Lucas*

---

1. As we stated above, the subject matter jurisdiction of URESA is limited to matters of child support. R.C. 3115.24 provides the one narrow statutory exception to this rule. Pursuant to this provision, the court may consider and adjudicate a paternity defense. The court in the instant case considered this defense and determined that appellee was indeed Courtney's father. The court of appeals in the instant case apparently confused the issues of "paternity" as set forth in R.C. 3115.24 and "parenting" as defined in R.C. 3109.21. The latter term and definition are not a part of URESA and therefore do not confer jurisdiction over custody and visitation rights in a URESA action.

*Cty. Budget Comm.* (1994), 71 Ohio St.3d 120, 121; 642 N.E.2d 362, 364; *In re Palmer* (1984), 12 Ohio St.3d 194, 196, 12 OBR 259, 261, 465 N.E.2d 1312, 1314.

{¶ 11} This holding is consistent with Ohio's requirement that support issues and visitation and custody issues be determined separately from each other. R.C. 3109.05(D). For URESA actions, R.C. 3115.21(B) sets forth the single narrow exception to this rule, pursuant to which a court may suspend *already established* visitation rights if the parent owing support has willfully failed to provide such support.[2] This situation is not presented by the case at bar.

{¶ 12} Other jurisdictions are in accord with the holding that a petition filed pursuant to URESA does not confer jurisdiction for custody and visitation issues. See, *e.g.*, *Mississippi Dept. of Human Serv. v. Marquis* (Miss.1993), 630 So.2d 331; *Hood v. Hood* (1984), 146 Vt. 195, 499 A.2d 772; *State ex rel. Dewyea v. Knapp* (1984), 208 Mont. 19, 674 P.2d 1104; *England v. England* (Minn.1983), 337 N.W.2d 681; *State ex rel. Hubbard v. Hubbard* (1983), 110 Wis.2d 683, 329 N.W.2d 202; *People ex rel. Meveren v. Larimaer Dist. Court* (Colo.1982), 638 P.2d 1371; *Moffat v. Moffat* (1980), 27 Cal.3d 645, 165 Cal.Rptr. 877, 612 P.2d 967; *Hoover v. Hoover* (1978), 271 S.C. 177, 246 S.E.2d 179; *Kline v. Kline* (1976), 260 Ark. 550, 542 S.W.2d 499.

{¶ 13} If appellant has in fact denied appellee his rightful visitation rights with Courtney, appellee has options of enforcement through actions other than a URESA action. See, *e.g.*, R.C. 3109.21 through 3109.37 (Uniform Child Custody

---

2. In *Porter v. Porter* (1971), 25 Ohio St.2d 123, 54 O.O.2d 260, 267 N.E.2d 299, paragraph four of the syllabus, this court held that in a URESA action, a court may condition a father's duty to support the children upon the mother's compliance with reasonable visitation privileges. However, the decision in *Porter* rested on R.C. 3103.02, which required the mother to conform her place of living to the husband's choice. The General Assembly repealed this statute in 1974 when it revised the domestic relations statutory scheme. (135 Ohio Laws, Part II, 603.) According to the statutes in place today, a visitation-rights action is a separate and distinct action from a support action, and a petition filed in the latter action does not confer jurisdiction over issues determined in the former action.

Jurisdiction Act). In an action commenced pursuant to URESA, the custodial parent requesting support enforcement has no notice that visitation and custody issues will be raised. This lack of notice may place the custodial parent at a considerable legal disadvantage. The custodial parent's interests in collecting child support pursuant to URESA are represented by the Child Support Enforcement Agency ("CSEA") through the county prosecutor's office. R.C. 3115.16(B); 3115.22(A). Once the issues of custody and visitation are introduced into the proceedings, CSEA's and the custodial parent's interests diverge. Unless the custody and visitation action is properly initiated, the custodial parent has no notice that this issue will be addressed by the court and therefore no reason to obtain proper independent legal representation.

{¶ 14} Accordingly, we hold that Ohio's URESA, R.C. Chapter 3115, does not confer subject matter jurisdiction over issues concerning child custody and visitation in an action for child support enforcement. Because our holding on appellant's first proposition of law is fully dispositive of this action, we decline to address her second proposition. The judgment of the court of appeals is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, WRIGHT, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____